**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**NORTHERN DIVISION**

**GREGORY M. WALKER**                                                              **PLAINTIFF**


**v.**                                        **NO. 3:24-cv-00005-PSH**


**MARTIN O'MALLEY, Commissioner**                                     **DEFENDANT**
**of the Social Security Administration**


<u>**MEMORANDUM OPINION AND ORDER**</u>


Plaintiff Gregory M. Walker ("Walker") challenges the denial of his application for disability insurance benefits. Walker does so on the ground that the findings of an Administrative Law Judge ("ALJ") are not supported by substantial evidence on the record as a whole.[1] Specifically, Walker maintains that all of his impairments were not evaluated in combination, and his residual functional capacity was erroneously assessed because the ALJ failed to properly evaluate a treating physician's medical opinions and Walker's subjective complaints. Because substantial evidence on the record as a whole supports the ALJ's findings, his decision is affirmed.

---

[1]     The question for the Court is whether the ALJ's findings are supported by "substantial evidence on the record as a whole and not based on any legal error." <u>See</u> <u>Sloan v. Saul</u>, 933 F.3d 946, 949 (8th Cir. 2019).

Walker was born on March 2, 1969, and was forty-eight years old on July 22, 2017, the alleged onset date. He alleged that he became disabled as a result of various mental and physical impairments.

In the ALJ's decision denying Walker's application, the ALJ summarized the evidence relevant to Walker's mental and physical impairments. See Transcript at 20-23, 24-30. There is no dispute as to the evidence relevant to those impairments, and the Court will not recite the evidence in great detail. Instead, the Court will simply note the following evidence in order to place Walker's assertions of error in context.

As to Walker's mental impairment, the record reflects that it has been characterized primarily as a generalized anxiety disorder, although a depressive disorder and a neurocognitive disorder have also been assessed at times. See, e.g., Transcript at 559, 811. He has experienced symptoms associated with the impairment since before the alleged onset date but, as of December 6, 2021, had not been evaluated by a mental health professional. See Transcript at 808. He has received treatment in the form of medication for his symptoms. The medication, principally buspirone, trazodone, and alprazolam, has proven beneficial. See Transcript at 830, 847. His activities of daily living are restricted, but his mental status has routinely been appropriate.

On August 7, 2021, Walker was seen by Dr. Edita Newton, M.D., ("Newton") for a consultative examination. <u>See</u> Transcript at 583-585. Walker's mental status was evaluated as a part of the examination. He denied mood changes, depression, suicidal ideation, nervousness, anxiety, and difficulties concentrating and sleeping. Upon examination, his mental status was as follows: "Alert and oriented to time, place, and situation. Cooperative with exam. Does not appear depressed or anxious. Able to communicate with no deficits. Recent and remote memory intact. Good insight and cognitive function." <u>See</u> Transcript at 584.

On December 6, 2021, Dr. Vickie Brewer Caspall, Ph.D., ("Caspall") performed a mental diagnostic evaluation of Walker. <u>See</u> Transcript at 807-814. Walker reported a history of memory problems and confusion, and he reported difficulties organizing his thoughts. He also reported increased agitation and impulsive behavior. Caspall noted Walker's mental status, and Caspall found it to be unremarkable. Caspall diagnosed a neurocognitive disorder and a generalized anxiety disorder. With respect to the effects of the impairments on Walker's adaptive functioning, Caspall opined as follows:

> How do mental impairments interfere with this person's day to
> day adaptive functioning? ...

The claimant reports driving only close to home and to places he is very familiar with. He often has to have someone help him with directions. Claimant generally relies on his wife for shopping but does occasionally shop alone. He sometimes gets lost in the store and has to write down instructions about where he is going, why, and what he needs. His wife handles personal finances in terms of balancing checks and bill paying. Claimant periodically attends social functions if he knows them well. Performance of household chores is carried out with wife's help. He says he has difficulty lifting things with his left arm. From the time he wakes up until going to bed he "piddles" around or rides around with his brother-in-law.

His wife completed the function report. According to wife, he forgets where his clothes are sometimes. He needs assistance using the toilet. He requires lists, phone calls, and alarms to get dressed, take medicine, eat, and pick up son from bus. He drives to the end of the driveway to get his son off of the bus. He is given his medicine by his wife so she can watch that he takes it. He claims that he continues to shop but wife says he hasn't [shopped] in quite a while due to confusion. He socializes with family members but sometimes doesn't recognize the family members.

Capacity to communicate and interact in a socially adequate manner?

It is my clinical impression that the claimant is capable of adequate, socially appropriate communication and interaction.

Capacity to communicate in an intelligible and effective manner?

Claimant has the capacity to communicate in an intelligible and effective manner.

Capacity to cope with the typical mental/cognitive demands of basic work-like tasks?

The claimant was able to sustain attention and answers questions requiring multiple details. Verbal comprehension was deemed normal as claimant had no difficulty understanding the questions claimant was asked during the diagnostic interview and it was not necessary to repeat questions on the mental status exam. Mental flexibility appeared below average.

Ability to attend and sustain concentration on basic tasks?

Claimant maintained focus and did not require refocusing. Claimant was able to move from one topic to another with ease. Claimant showed poor working memory. There were signs of problems with shifting attention.

Capacity to sustain persistence in completing tasks?

No signs of difficulty with persistence were observed during this examination.

Capacity to complete work-like tasks within an acceptable timeframe?

The claimant has difficulty with memory. He has no signs and doesn't report development problems.

See Transcript at 811-812.

On December 19, 2022, Dr. Sharon Jamie Pritchard, M.D., ("Pritchard") completed a mental medical assessment questionnaire on behalf of Walker. See Transcript at 847-851. Walker reported that he was doing well on his medication, although it caused sedation. Pritchard opined, in part, that Walker's mental impairment prevents him from meeting competitive standards in areas of understanding and remembering

detailed instructions, carrying out detailed instructions, setting realistic goals or making plans independent of others, and dealing with the stress of skilled or semi-skilled work. Pritchard additionally opined that Walker's psychiatric condition exacerbates his pain and other physical symptoms, and he would be expected to miss work more than four days a month because of his impairment and/or treatment.

Walker also has physical impairments, impairments that include diabetes, degenerative disc disease of the cervical spine, coronary artery disease, and hypertension. Walker's assertions of error here, though, center specifically on the ALJ's handling of Walker's difficulties standing and walking and his subjective complaints.

The record reflects that Walker suffered a stroke in 2017, or what the progress notes characterize as an acute cerebrovascular accident. See Transcript at 593-634. He was treated with medication and physical therapy that proved beneficial; the physical therapy, in particular, helped with the problems he was having with his balance. He nevertheless continued to report, inter alia, weakness in his left arm and left leg, poor coordination, and a loss of vision in his left eye. See Transcript at 583, 749, 860. He experienced dizziness and would occasionally fall. He reported using a cane to walk.

Walker sought medical attention for his stroke-related problems, and for episodes of what were characterized as transient ischemic attacks, well past the alleged onset date. See, e.g., Transcript at 671-690, 740-751, 754-762. The progress notes reflect that he initially had decreased strength in his left leg, an unsteady gait, and dizziness. See, e.g., Transcript at 519, 749-750. It appears that he also sometimes used a cane to help with his balance. His ambulatory issues improved, though, with conservative treatment, see, e.g., Transcript at 584, 793, 790, 787, 879, treatment in the form of physical therapy and prescription medication that appears to have included gabapentin.

On August 7, 2021, Walker was seen by Newton for a consultative examination. See Transcript at 583-585. As a part of the examination, Walker's ability to ambulate was evaluated. He reported weakness in his left leg, but his gait was normal, and he was able to rise from a sitting position without assistance. He was also able to stand on his tiptoes and heels and was able to bend and squat without difficulty. He had no edema, no cyanosis, and no erythema. He had good tone, 5/5 strength on his right side, and 4/5 strength on the left side. Newton opined, in part, that Walker should be able to stand and walk for a partial workday secondary to left sided weakness.

On December 19, 2022, Pritchard completed a "physical medical assessment questionnaire with manipulation hands and legs limitations" on behalf of Walker. <u>See</u> Transcript at 868-872. Walker reported that he has difficulty with his balance, experiences dizziness, and falls. Pritchard opined, in part, that Walker can only stand for about one hour in a work setting before he must sit down and can walk for less than two hours in such a setting. Pritchard also opined that Walker requires a cane to walk. Additionally, Pritchard opined that Walker would be expected to miss work more than four days a month because of his impairment and/or treatment.

Walker's medical records were reviewed by state agency medical consultants as a part of his application for disability insurance benefits. Dr. John Etienne Mourot, Ph.D., opined that Walker's mental impairments are not severe. <u>See</u> Transcript at 118. Dr. Diane Kogut, Ph.D., disagreed. Kogut opined that Walker's mental impairments cause limitations in the functional areas, but the limitations are only mild to moderate. <u>See</u> Transcript at 133. With respect to Walker's physical impairments, Drs. Ken Murphy, M.D., and Lucy Sauer, M.D., agreed that the impairments are such that Walker could perform a reduced range of light work, including standing and/or walking for a total of six hours in an eight hour workday. <u>See</u> Transcript at 121-125, 134-135.

The record contains a summary of Walker's work history. <u>See</u> Transcript at 230-238. The summary reflects that his work history is quite good.

Walker's wife completed a series of reports as a part of Walker's application. <u>See</u> Transcript at 332-339, 369-376, 381-383. In a function report, she represented, <u>inter alia</u>, that his daily activities are limited, and he must be reminded how and when to do simple tasks. He can drive short distances. He rarely completes what he begins and can only pay attention for a couple of minutes.

Walker testified during the administrative hearing. <u>See</u> Transcript at 44-66.[2] His prior work was on a survey crew with the Arkansas Department of Transportation and as a road foreman for Baxter County, Arkansas. He has also worked on the family farm. He stopped working for pay following his 2017 stroke, primarily because of the loss of vision in his left eye and his memory problems. His medication includes Xanax for anxiety, Buspar for depression, and gabapentin for nerve pain. Walker uses a cane to walk as he frequently falls. He has difficulty remembering and concentrating, which cause him to become depressed.

---

[2]     Walker's wife also testified during the administrative hearing. <u>See</u> Transcript at 66-73.

The ALJ found at step two of the sequential evaluation process that Walker's severe impairments include left eye blindness, acute cerebrovascular accident with residual left-sided weakness, cerebellar stroke syndrome, a neurocognitive disorder, and an anxiety disorder.[3] At step three, the ALJ found that Walker does not have an impairment, or combination of impairments, that meet or medically equal a listed impairment, including Listings 1.15, 1.16, 12.02, and 12.06.[4] The ALJ then assessed Walker's residual functional capacity and found that he is capable of light work with additional limitations. As a part of so finding, the ALJ found Pritchard's medical opinions unpersuasive for the following reasons:

---

[3]    At step one, the ALJ found that Walker engaged in substantial gainful activity after the alleged onset date but nevertheless considered his application for the period from the alleged onset date through the date of the decision.

[4]    The listings in 1.00 encompass musculoskeletal disorders. Listing 1.15 specifically encompasses disorders of the skeletal spine resulting in compromise of a nerve root(s), and Listing 1.16 specifically encompasses lumbar spinal stenosis resulting in comprise of the cauda equina. Listing 1.15 and 1.16 both require a showing of, inter alia, a documented medical need for a walker, bilateral canes, or bilateral crutches, or a wheeled and seated mobility device involving the use of both hands.

The listings in 12.00 encompass mental disorders. Listing 12.02 specifically encompasses neurocognitive disorders and requires a showing of, inter alia, an extreme limitation of one, or marked limitation of two, of the four functional areas: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. Listing 12.06 specifically encompasses anxiety and obsessive-compulsive disorders, and requires a showing of, inter alia, an extreme limitation of one, or marked limitation of two, of the four functional areas or evidence of medical treatment, mental health therapy, psychosocial support(s) or a highly structed setting(s) that is ongoing and that diminishes the symptoms or signs of the mental disorder.

... First, they are wholly unsupported, as purported observations referenced in the medical source statements—including poor balance and difficulty walking, vertigo, confusion, syncope, difficulty thinking, inability to concentrate, perceptual disturbances, behavioral abnormalities, memory impairment, and numbness—are not mentioned in Dr. Pritchard's relatively benign treatment notes. Rather, limitations including near-constant off task behavior, habitual absenteeism, and extreme environmental restrictions find no support in her recorded observations. Similarly, this level of debilitation is wholly inconsistent with the medical evidence, showing independent activities of daily living, of which the claimant would be incapable were he as debilitated as opined by Dr. Pritchard. The claimant was observed to be in no distress, with normal range of motion, only mild weakness on the left and normal strength on the right, regular heart rate and rhythm, and no focal neurological deficits. Mental examinations showed the claimant to be alert and oriented, pleasant and cooperative, and appropriately groomed and dressed, with understandable speech, good eye contact, and intact memory and cognition. Specifically as to use of an assistive device, the claimant reported using a cane only rarely, and appears to have been observed to use one only during his February 2020 hospitalization. Observations otherwise generally showed independent ambulation with a normal gait, and there is no indication that a cane is medically necessary.

See Transcript at 29-30. The ALJ also considered Walker's subjective complaints and found them "not entirely consistent" with the evidence in the record. See Transcript at 24. The ALJ found at step four that Walker is unable to perform his past work. At step five, the ALJ found that there is other work Walker can perform and is therefore not under a disability as defined in the Social Security Act.

Walker maintains that the ALJ's findings are not supported by substantial evidence on the record as a whole. Walker so maintains first because his impairments were not evaluated in combination. He notes that he has a mental impairment and mobility issues, and "[i]t is unclear how the ALJ found the consistent medical evidence and ... Walker's sworn description to not at least medically equal the requirements of Listing 1.15 and 1.16, 12.02, and 12.06." See Docket Entry 10 at CM/ECF 4.

At step three, the ALJ is required to determine whether a claimant's impairment meets or equals a listed impairment. See Raney v. Barnhart, 396 F.3d 1007 (8th Cir. 2005). An impairment equals a listed impairment if the claimant can show medical findings equal in severity to all the criteria of the listed impairment. See Marciniak v. Shalala, 49 F.3d 1350 (8th Cir.1995). The determination is strictly a medical determination, see Cockerham v. Sullivan, 895 F.2d 492 (8th Cir. 1990), and the claimant bears the burden of showing that his impairment equals a listed impairment, see Pyland v. Apfel, 149 F.3d 873 (8th Cir. 1998). As a part of making the determination at step three, the ALJ is required to consider the claimant's impairments in combination. See Delrosa v. Sullivan, 922 F.2d 480 (8th Cir. 1991). The ALJ should not "fragmentize them in evaluating their effects." See Id. at 484.

At step three, the ALJ noted his obligation to consider whether Walker has an impairment that meets or equals a listed impairment and, as a part of doing so, to consider all of his impairments in combination. The ALJ found that the impairments, both individually and in combination, do not meet or equal Listings 1.15, 1.16, 12.02, or 12.06. In so finding, he made little mention specifically of why the impairments, in combination, do not equal Listings 1.15, 1.16, 12.02, or 12.06. He simply found that the impairments, in combination, do not equal those listings. The ALJ's failure to provide an exhaustive explanation, though, does not warrant a remand because his finding is supported by substantial evidence on the record as a whole. See Landreth v. Berryhill, 698 Fed. Appx. 318 (8th Cir. 2017) (no error when ALJ fails to explain why impairment does not equal listed impairment as long as overall conclusion supported by record). The Court so finds for two reasons.

First, Walker has failed to identify medical evidence supporting his assertion that his impairments, in combination, equal Listing 1.15, 1.16, 12.02, or 12.06. He simply notes evidence of his mental impairment and mobility issues and asks the Court to extrapolate from that evidence that the impairments must equal a listed impairment. The Court declines that invitation.

Second, the ALJ adequately considered the medical evidence relevant to Walker's mental impairment and mobility issues, <u>see</u> Transcript at 21-23, and the ALJ could find as he did at step three. The Court can only guess as to what evidence might equal Listing 1.15, 1.16, 12.02, or 12.06. As the Commissioner of the Social Security Administration ("Commissioner") correctly notes, Walker "cites no evidence that the ALJ discounted or ignored a clinical finding relevant to a listing simply because it stemmed from a different impairment than the one specifically referenced in the listing." <u>See</u> Docket Entry 12 at CM/ECF 6.

It is true Pritchard opined that Walker's psychiatric condition exacerbates his pain and other physical symptoms. Pritchard failed, though, to explain how Walker's psychiatric condition does so. On the checklist form Pritchard completed, she wrote "monocular vision, impaired balance ... CVA" in support of her opinion. <u>See</u> Transcript at 850. The Court can only guess what her answer means. It does not explain how Walker's psychiatric condition exacerbates his pain and other physical symptoms.

It is also true that Walker testified his physical impairments cause him to become depressed, <u>see</u> Transcript at 55, which is entirely understandable. That fact, though, does not demonstrate his impairments, in combination, equal Listing 1.15, 1.16, 12.02, or 12.06.

Walker offers another reason why the ALJ's findings are not supported by substantial evidence on the record as a whole. Walker maintains that his residual functional capacity was erroneously assessed. Walker offers two reasons why, the first being that the ALJ failed to properly evaluate Pritchard's medical opinions.

The ALJ is required to assess the claimant's residual functional capacity, which is a determination of the most the claimant can do despite his limitations. See Brown v. Barnhart, 390 F.3d 535 (8th Cir. 2004). The assessment is made using all of the relevant evidence in the record. See Jones v. Astrue, 619 F.3d 963 (8th Cir. 2010).

As a part of assessing the claimant's residual functional capacity, the ALJ must evaluate the medical opinions in the record. See Wagner v. Astrue, 499 F.3d 842 (8th Cir. 2007). The regulations governing the consideration of a medical opinion were revised for applications, like the one here, that were filed on or after March 27, 2017. The new regulations provide, in part, that the ALJ will not give any specific weight to any medical opinion, including the opinion of a treating physician. See Phillips v. Saul, No. 1:19-cv-00034-BD, 2020 WL 3451519 (E.D. Ark. 2020). Instead, the ALJ will determine the persuasiveness of a medical opinion based on the following:

[...] supportability; consistency; relationship with the claimant; specialization; and any other factor that tends to support or contradict a medical opinion. 20 C.F.R. 404.1520c(a), (c). ALJs are required to "explain" their decisions as to the two most important factors—supportability and consistency. 20 C.F.R. 404.1520c(b)(2). The "more relevant the objective medical evidence and supporting explanations presented" and the "more consistent" a medical opinion is with evidence from other medical and non-medical sources, the more persuasive the opinion should be. 20 C.F.R. 404.1520c(c)(1)-(2).

See Id. at 2.

The ALJ found Pritchard's medical opinions unpersuasive because they are not supported by her own treatment notes and inconsistent with the medical evidence. For the reasons that follow, substantial evidence on the record as a whole supports the ALJ finding.

First, the ALJ could and did properly find that Pritchard's medical opinions as to Walker's mental limitations are not persuasive because the opinions are not supported by Pritchard's own treatment notes. Pritchard opined, and the ALJ agreed, that Walker has a mental impairment that gives rise to difficulties with memory and concentration. The ALJ accounted for those limitations in assessing Walker's residual functional capacity. Pritchard's notes otherwise contain only benign observations about Walker's mental limitations. For instance, the notes reflect that

Walker's mental status was consistently unremarkable. <u>See</u>, <u>e.g</u>., Transcript at 512, 518, 522, 528, 534, 538, 543, 547, 551, 555, 562, 787, 790, 793, 828, 830, 833, 879, 882, 885, 888, 892. Walker was typically alert, was oriented times three, and had an appropriate mood, affect, and demeanor. He was appropriately groomed and dressed, made good eye contact, and had understandable speech. He benefitted from appropriate medication and reported during an April 9, 2019, presentation that he was "doing well" with his medication. <u>See</u> Transcript at 560.

Second, the ALJ could and did properly find that Pritchard's medical opinions as to Walker's mental limitations are not persuasive because they are inconsistent with the other medical evidence. The other medical examiners repeatedly observed that Walker had an unremarkable mental status. <u>See</u>, <u>e.g</u>., Transcript at 567, 584, 749, 808-809. Caspall, for example, observed that Walker's mental status was unremarkable and caused minimal work-related limitations. Caspall opined, in part, that although Walker's activities of daily living are restricted and he has memory problems, he can communicate and interact effectively with others; can sustain attention, concentration, and persistence; and has no difficulty understanding questions. Caspall's assessment was shared by the state agency medical consultants.

Third, the ALJ could and did properly find that Pritchard's medical opinions as to Walker's physical limitations are not persuasive because the opinions are not supported by Pritchard's own treatment notes. Pritchard opined, and the ALJ agreed, that Walker has physical limitations caused by a stroke. The ALJ accounted for those limitations in assessing Walker's residual functional capacity. Pritchard's notes otherwise contain unremarkable observations about Walker's limitations. See, e.g., Transcript at 510-515, 516-519, 520-524, 526-530, 532-535, 536-539, 541-548, 549-552, 553-556, 559-563, 787-789, 790-792, 793-795, 827-829, 830-832, 833-835, 879-881, 882-884, 885-887, 888-890, 891-893. The notes reflect that Walker had a normal gait and was in no apparent distress. See, e.g., Transcript at 555. His primary form of exercise was walking and running a farm. See, e.g., Transcript at 788. He was mildly obese, and diet and exercise were recommended. See, e.g., Transcript at 551.

Fourth, the ALJ could and did properly find that Pritchard's medical opinions as to Walker's physical limitations are not persuasive because they are inconsistent with the other evidence. For instance, Pritchard's notes are inconsistent with a report that was prepared following Walker's two months of physical therapy. In a July 6, 2020, progress note, a physical therapist opined as follows: "Patient progressed well with therapy. His

18

strength and balance improved significantly," although he did continue to report "falls outside of therapy ..." See Transcript at 752. Although Walker occasionally used a cane to walk, the ALJ could and did find that observations generally showed "independent ambulation with a normal gait, and there is no indication that a cane is medically necessary." See Transcript at 30.

"It is not the role of the court to re-weigh the evidence and, even if this court would decide the case differently, it cannot reverse the [ALJ's] decision if that decision is supported by good reason and is based on substantial evidence." See Dillon v. Colvin, 210 F.Supp.3d 1198, 1201 (D.S.D. 2016). In fact, the Court may not reverse the ALJ's decision merely because substantial evidence would have supported an opposite decision. See Id. Here, the ALJ could find as he did with respect to Pritchard's medical opinions as the ALJ's findings are supported by substantial evidence on the record as a whole.

Walker offers another reason why his residual functional capacity was erroneously assessed. He maintains that his subjective complaints were not properly evaluated. It is his contention that his descriptions of his symptoms were ignored, as were the observations of third parties and the opinions of his physicians.

As a part of assessing the claimant's residual functional capacity, the ALJ must consider whether the claimant has a medically determinable impairment that could reasonably be expected to produce symptoms and, if so, evaluate the intensity, persistence, and limiting effects of the symptoms. In evaluating the intensity, persistence, and limiting effects of the claimant's symptoms, the ALJ must consider all the evidence in the record, including evidence of the following factors:

> (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the claimant receives or has received for relief of pain or other symptoms; (6) any measures other than treatment a claimant uses or has used to relieve pain or other symptoms ...; and (7) any other factors concerning a claimant's functional limitations and restrictions due to pain or other symptoms.

See Social Security Ruling 16-3p. See also Polaski v. Heckler, 739 F.2d 1320 (8th Cir. 1984).

The ALJ found that Walker's subjective complaints were not entirely consistent with the medical evidence and other evidence of record. For the reasons that follow, substantial evidence on the record as a whole supports the ALJ finding.

First, the ALJ could and did properly find that Walker's medically determinable impairments could reasonably be expected to produce symptoms. Specifically, as the ALJ found, Walker suffers from an anxiety disorder, a neurocognitive disorder, and impairments that impact his mobility. The Court is satisfied that the ALJ adequately evaluated the medical evidence relevant to those impairments.

Second, the ALJ adequately evaluated the evidence relevant to the intensity, persistence, and limiting effects of Walker's symptoms. For instance, the ALJ noted Walker's daily activities; the location, duration, frequency, and intensity of his symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness of his medication; and his occasional use of a cane to ambulate. See Transcript at 22, 24-27. The ALJ represents, and the Court accepts, that he considered the statements of David Montgomery, Rick Byrd, Melissa Renfro, and Mark Russell, see Transcript at 24, and the ALJ clearly considered the opinions of the physicians, see Transcript at 28-30.

It is true that the ALJ made little, if any, mention of the side effects of Walker's medication. The ALJ's failure to do so, though, does not warrant a remand because his evaluation of Walker's subjective complaints is supported by substantial evidence on the record as a whole.

"The ALJ is in the best position to gauge the credibility of testimony and is granted deference in that regard." See Estes v. Barnhart, 275 F.3d 722, 724 (8th Cir. 2002). In this instance, Walker has not offered a sound reason for deviating from that rule. The evaluation of his credibility is one of the acceptable evaluations of all the evidence and will not be disturbed.

For these reasons, the Court finds that the ALJ's findings are supported by substantial evidence on the record as a whole. Walker's complaint is dismissed, all requested relief is denied, and judgment will be entered for the Commissioner.[5]

IT IS SO ORDERED this 25th day of June, 2024.

_____
UNITED STATES MAGISTRATE JUDGE

---

[5]     In the conclusion portion of Walker's brief, he maintains that a change in the manner in which ALJs are hired by the Social Security Administration has resulted in a violation of Canon of Judicial Ethics 2A. The Court declines the invitation to address the issue as it has not been adequately briefed.